IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BRUCE M. VANN,                          )
                                        )
        Petitioner,                     )
                                        )
v.                                      )          No. 1:19-cv-01059-STA-jay
                                        )
JASON CLENDENION,                       )
                                        )
        Respondent.                     )

ORDER DISMISSING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Before the Court is Petitioner Bruce M. Vann's *pro se* 28 U.S.C. § 2254 habeas corpus

petition (the "Petition").  (ECF No. 1.)  For the following reasons, the Petition is **DISMISSED.**

**BACKGROUND**

In December 2013, the Madison County, Tennessee grand jury returned an indictment

charging Vann with three counts of rape of a child.  (ECF No. 22-1at 6-9.)  Both before and after

trial, counsel unsuccessfully moved for recusal of the trial judge.  (*Id.* at 24; ECF No. 22-10 at

20-21.)  The case proceeded to trial.

The victim, D. H., was the Defendant's step-daughter.  *State v. Vann*, No. W2014-02119-

CCA-R3-CD, 2015 WL 5096355, at *1 (Tenn. Crim. App. Aug. 28, 2015).  She testified that on

August 31, 2013, when she "was eleven years old," Vann "woke her up and took her to his

bedroom," where "he touched the outside and inside of her 'private part' with his fingers and his

tongue."  *Id.*  He "then put his 'private part' inside her 'private part.'"  *Id.*  D.H. explained that

"the Defendant did not threaten her, but he did hold her down during the attack." *Id.* She testified that she did not tell her mother about the incident the next day when her mother returned from work at 6:00 a.m. *Id.* She recalled that she "went to school like normal that Monday without telling anyone about what had happened." *Id.* She eventually wrote a note to her mother about the incident. *Id.* She gave the note to "Uncle Ronnie" and asked him to give it to her mother. *Id.* "D.H. admitted that she was mad at her mother when she wrote the note but denied that she wrote it to hurt her mother's feelings." *Id.* The victim recalled that her mother took her to the emergency room the next day, and eventually to the Child Advocacy Center in Jackson, Tennessee. *Id.* at *2. There she spoke with a forensic interviewer. *Id.*

The forensic interview "was recorded and played for the jury at trial." *Id.* Consistent with her trial testimony, D.H. told the interviewer that the Defendant had penetrated her digitally and with his penis. *Id.*

"Doctor Elly Riley testified that she specialized in family medicine and that she saw D.H. on September 5, 2013." *Id.* at *3. The witness recalled that "D.H. said that the Defendant 'had come into her room and touched her,'" and that D.H. provided specifics about the abuse when asked. *Id.* Dr. Riley's gynecological exam of D.H. revealed that she had trichomoniasis, a sexually transmitted disease. *Id.* A nurse practioner from "the Jackson–Madison County General Hospital emergency room" testified that "the Defendant tested positive for trichomoniasis." *Id.*

D.H.'s mother testified that after she read her daughter's note, she took her to the emergency room and to the Child Advocacy center. *Id.* She confirmed that she herself had tested positive for trichomoniasis. *Id.* at *4.

The Defendant's sister, Geraldine Ware, testified for the defense.  *Id.*  She recalled that she went with the victim and her mother to the emergency room.  *Id.*  "According to Ms. Ware, the doctor said that D.H. 'hadn't been messed with' because she 'was still intact.'"  *Id.*

The Defendant testified that he never "had any sexual contact with D.H."  *Id.*   He recalled that "nothing unusual happened" the evening of the alleged incident and that the victim went to bed "and that was the end of it."  (ECF No. 22-5 at 42.)  He "claimed that he was shocked when he tested positive for trichomoniasis and that he did not know how he contracted the disease."  *Vann*, 2015 WL 5096355 at *4.

The jury convicted the Defendant on all three counts of rape of a child.  *Id.*  Vann was sentenced to an effective sentence of thirty-five years' imprisonment.  *Id.*  He took an unsuccessful direct appeal, *see id.* at *1, and he did not timely file an application for permission to appeal ("APA") with the Tennessee Supreme Court.[1]

On August 17, 2016, Petitioner submitted a state post-conviction petition to prison authorities for mailing.  (ECF No. 22-16 at 3-15.)  The post-conviction trial court denied the petition, and the Tennessee Court of Criminal Appeals affirmed.  *See Vann v. State*, No. W2017-02194-CCA-R3-PC, 2018 WL 4181707, at *1, 3 (Tenn. Crim. App. Aug. 30, 2018), *perm. appeal denied* (Tenn. Dec. 5, 2018).  Vann filed an APA with the Tennessee Supreme Court, which was denied on December 5, 2018.  (ECF No. 22-23.)

---

[1]   Van filed a motion for an extension of time to file an application for permission to appeal under Tenn. R. App. P. 11, which was denied.  (ECF No. 22-15.)

**DISCUSSION**

Vann submitted his federal Petition to prison authorities on March 20, 2019.[2]  (ECF No. 1 at 18.)  The Petition presents the following claims:[3]

Claim 1:  Trial counsel rendered ineffective assistance by failing to investigate and call alibi witnesses.

Claim 2:  Recusal

> Claim 2A:  The trial court erred when it denied Petitioner's motion for recusal of the trial judge.

> Claim 2B:  Trial counsel was ineffective for failing to argue that the trial court erred in denying the recusal motion.

> Claim 2C:  Appellate counsel was ineffective for failing to raise the recusal issue on appeal.

> Claim 2D:  Post-conviction counsel rendered ineffective assistance for failing to raise trial and appellate counsel's alleged ineffective assistance relating to the recusal motion.

Claim 3:  Testimony About Sexually Transmitted Disease

> Claim 3A:  Trial counsel was ineffective for failing to object to hearsay testimony about a sexually transmitted disease.

> Claim 3B:  Appellate counsel was ineffective for failing to raise the issue of the alleged hearsay evidence on appeal.

> Claim 3C:  Post-conviction counsel rendered ineffective assistance by failing to argue that trial and appellate counsel were ineffective regarding the alleged hearsay evidence.

Claim 4: Post-conviction counsel was ineffective in the presentation of claims of ineffective assistance of trial and appellate counsel.

On May 17, 2019, Respondent Jason Clendenion filed a motion to dismiss the Petition on the ground that it was filed over one month after the expiration of the applicable limitations

---

[2]  *See Houston v. Lack*, 487 U.S. 266, 270, 276 (1988) (adopting mailbox rule for federal *pro se* prisoner filings).

[3]  The Court has regrouped and renumbered the claims for clarity.

period.  (ECF No. 11.)  Vann filed a response in opposition to the motion.  (ECF No. 13.)  He acknowledged that the Petition was untimely, but he argued that he was entitled to equitable tolling because his post-conviction counsel did not expeditiously inform him that the Tennessee Supreme Court had denied his APA.  He further argued that he exercised reasonable diligence in seeking to learn the status of his application.  The Court denied the motion without prejudice and ordered Respondent to file the complete state-court record and an answer to the Petition.  (ECF No. 16.)  Vann was given permission to file a reply.

Respondent filed the complete state-court record and his Answer in June 2020.  (ECF No. 22 & 25.)  He renews his argument that the Petition should be dismissed as untimely.  In the alternative, he maintains that the claims are, variously, without merit or procedurally defaulted. Vann did not file a reply.

I.      Timeliness

A § 2254 petition is subject to a one-year limitations period, which in most cases commences from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]"  28 U.S.C. § 2244(d)(1).  The one-year limitations period is tolled during the time "a properly filed application for State post-conviction or other collateral review . . . is pending[.]"  28 U.S.C. § 2244(d)(2).  The time bar is also subject to equitable tolling where the petitioner demonstrates "that he has been pursuing his rights diligently[] and . . . that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted).[4]  The petitioner carries the burden of

---

[4]   The limitations period may also be "overcome" through a "gateway" claim of actual innocence.  *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013).  Vann has not asserted such a claim.

showing that he is entitled to equitable tolling.  *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

In general, an attorney's "excusable neglect," such as "miscalculation" of the federal limitations period, is not an extraordinary circumstance warranting equitable tolling.  *Taylor v. Palmer*, 623 F. App'x 783, 789 (6th Cir. 2015) (quoting *Lawrence v. Florida,* 549 U.S. 327, 336–37 (2007) and *Holland v. Florida,* 560 U.S. 631, 651–52 (2010) (internal citations and quotation marks omitted)).  Nevertheless, the Sixth Circuit has held that "[b]oth ineffective assistance of counsel and 'a substantial, involuntary delay in learning about the status of [an] appeal[]' may constitute extraordinary circumstances sufficient to warrant relief."  *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011)).

A petitioner whose attorney did not expeditiously advise him of the disposition of his state court appeal must not, however, "passively await decision," but is required to demonstrate that he exercised reasonable diligence to learn of the status of his case.  *Robinson*, 424 F. App'x at 443 (quoting *Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002)).  Whether a petitioner was reasonably diligent turns, in large part, on the conditions he faced and the resources available to him at the time.  *Jones v. Warden, Lebanon Corr. Inst.*, No. 2:13-CV-155, 2014 WL 907253, at *7 (S.D. Ohio Mar. 7, 2014), *report and recommendation adopted*, No. 2:13-CV-155, 2014 WL 1384061 (S.D. Ohio Apr. 9, 2014) (""[P]etitioners find themselves in different circumstances, and those circumstances dictate, to some extent, what they must do in order to be considered diligent.")  A relevant circumstance that may vary between individuals is the extent to which a prison allows inmates internet access to databases that provide the sought-after information.  *Id.*

In its order denying without prejudice Respondent's motion to dismiss the Petition as untimely, the Court found that Vann filed his pleading thirty-three days after the limitations period expired on February 15, 2019.[5]  (ECF No. 16 at 4.)  Petitioner did not, at that time, dispute that the Petition is untimely.  He argued, however, that he was entitled to equitable tolling because his post-conviction counsel failed to expeditiously inform him that the Tennessee Supreme Court had declined discretionary review in his post-conviction appeal.  He also argued that he exercised reasonable diligence in preserving his rights.  In support, he submitted documents showing that he sent a letter to his attorney on February 4, 2019 (ECF No. 13-1 at 4), and a second letter on February 14, 2019 (*id.* at 5), inquiring into the status of the APA he filed on October 16, 2018.  He also proffered a copy of a letter dated February 21, 2019, to the Circuit Court Clerk asking for a case update (ECF No. 13-1 at 1), as well as the clerk's written response, which he received on March 6th or 7th, informing him that the APA had been denied (ECF No. 13-1 at 2-3; ECF No. 13 at 2).  The final document was a copy of his attorney's response, received on March 13, 2019, confirming the denial of the APA.  (ECF No. 13-1 at 6, 18; ECF No. 13 at 2.)

The Court recognized that "an attorney's 'excusable neglect,' such as a 'miscalculation' of the federal limitations period, is not an extraordinary circumstance warranting equitable tolling." (ECF No. 16 at 5 (quoting *Taylor v. Palmer*, 623 F App'x 783, 789 (6th Cir. 2015).)  The Court noted, however, that "[b]oth ineffective assistance of counsel and 'a substantial,

---

[5]  Details of the limitations calculation are set forth in the order denying the motion to dismiss. (*See* ECF No. 16 at 3-4.)  The Court found that Petitioner allowed 294 days to elapse between the date his judgment of conviction became final and the day he filed his state post-conviction petition on August 17, 2016.  The limitations period was statutorily tolled from that date until December 5, 2018, when the Tennessee Supreme Court denied Petitioner's APA.  The federal habeas limitations clock then ran for an additional 71 days, expiring on February 15, 2019.  Vann submitted the Petition to prison officials for mailing on March 20, 2019.

involuntary delay in learning about the status of [an] appeal[]' may constitute extraordinary circumstances sufficient to warrant relief."   (*Id.* (quoting *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012).)

The Court assumed, arguendo, that post-conviction counsel's failure to notify Vann sooner about the denial of his APA was an extraordinary circumstance.  It determined, however, that it was a close question as to whether Petitioner exercised reasonable diligence in learning of the disposition of his APA.  On the one hand, Petitioner could, "for at least for some period of time, . . . reasonably rely on the lack of information [from his attorney] as an indication that nothing had happened in the state [Supreme] [C]ourt[.]"   (ECF No. 16 at 6 (quoting *Jones v. Warden, Lebanon Corr. Inst.*, No. 2:13-CV-155, 2014 WL 907253, at *7 (S.D. Ohio Mar. 7, 2014), *report and recommendation adopted*, No. 2:13-CV-155, 2014 WL 1384061 (S.D. Ohio Apr. 9, 2014)).)  Vann's APA was filed on October 16, 2018.  When he did not hear from his attorney by February 4, 2019, he contacted counsel by letter.  He waited only ten days to hear back from counsel before he mailed a second letter.  One week later, having failed to receive a response from his attorney, he wrote to the clerk of court.  He filed his Petition two weeks after receiving the clerk's response that his application had been denied.  The Court found that those facts suggested that Petitioner exercised reasonable diligence in seeking to discover the status of his APA.

However, the Court *sua sponte* raised the fact that a document Vann attached to his Petition indicated that he may have been able to learn of the fate of his APA without assistance from counsel or the court clerk.  The document was a copy of the Tennessee Court of Criminal Appeals' post-conviction decision, the first page of which contained the Westlaw editorial note "Application for Permission to Appeal Denied by Supreme Court December 5, 2018."  (ECF No.

8

1-1 at 1.)  At the bottom of the attachment was the search date "3/19/2019," and a universal resource locator, or URL, suggesting that the search was obtained through the prison's Westlaw account.[6]  (*Id.*)  It therefore appeared that Petitioner searched for and downloaded the opinion in preparation of his Petition, which was filed the next day.  The Court found that the information raised the question of whether Vann could have conducted a Westlaw search to ascertain the status of his APA prior to the expiration of the limitations period on February 14, 2019.

The Court noted, however, that Respondent had not made that argument.  There was, therefore, no opportunity for Petitioner to address the issue and no additional information on the record that might show the extent of Petitioner's access to Westlaw during the limitations period. The Court found that, even if Vann had "some access" to Westlaw, his diligence would be a close question.  The Court therefore denied the motion to dismiss without prejudice to reassert and ordered Respondent to file the complete state-court record and an answer to the Petition. Respondent was directed that its pleading "shall assert appropriate procedural defenses" in addition to any merits arguments he might have.  (ECF No. 16 at 7.)  The Court allowed Petitioner an opportunity to file a reply.  (*Id.* at 8.)

In his Answer, Respondent renews his statute of limitations defense.  As he did in his motion to dismiss, he argues that counsel's failure to notify Petitioner of the denial of the APA is not an extraordinary circumstance warranting equitable tolling.  (ECF No. 25 at 10 (citing *Elliott v. Dewitt*, 10 F. App'x 311, 313 (6th Cir. 2011) (attorney error in failing to inform petitioner of state court's decision "is not a basis for equitable tolling")).)  He also maintains that Vann did not

---

[6]  "https//nextcorrectional.westlaw.com/Document/Ic4c0d580adc311e8a2c8dcb28b5/V." (ECF No. 1-1 at 1.)

exercise reasonable diligence in seeking the disposition of his APA.  In support, he relies on the fact that the Petitioner's own document showed that he had access to Westlaw in prison.

The issue of Vann's access to a computerized legal research tool is now squarely before the Court.  More to the point, Respondent has had an opportunity to, and did, brief the issue, and Petitioner could have, but did not, submit his own arguments or evidence regarding the extent of his access to Westlaw.  In particular, because Vann did not file a reply, he has not documented, or even alleged, that his access to that research tool was too limited to allow him to learn of the denial of APA during the limitations period.  His failure to provide any explanation dooms his bid for equitable tolling, as he carries the burden of establishing that he exercised reasonable diligence.

Accordingly, the Court concludes that, even assuming counsel's failure to expeditiously notify Petitioner of the denial of his APA is an extraordinary circumstance, Vann has not demonstrated that he exercised reasonable diligence in preserving his rights.  Because Petitioner is not entitled to equitable tolling, the Petition is **DISMISSED** as untimely.

II.     Alternative Grounds For Dismissal

A.   Legal Standards on Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance,

the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted is he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.* at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim.

12

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome his procedural defaults by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

B. Ineffective Assistance of Counsel Legal Standards

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Pollini v. Robey*, 981 F.3d 486, 493 (6th Cir. 2020), *cert. denied*, No. 20-7918, 2021 WL 2519379 (U.S. June 21, 2021). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must

overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690-91. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

C.  Post-conviction Counsel's Alleged Ineffective Assistance

As indicated above, Petitioner argues that post-conviction counsel was ineffective for failing to present ineffective-assistance claims relating to trial and appellate counsel. To the extent he purports to raise stand-alone challenges to post-conviction counsel's effectiveness, he

has not stated cognizable claims.  *See Coleman*, 501 U.S. at 752 (a habeas petitioner does not have a constitutional right to post-conviction counsel); 28 U.S.C. § 2254(i) (the ineffective assistance of post-conviction counsel "shall not be a ground for relief in a proceeding arising under section 2254").  Therefore, even if the Petition were not untimely, Claims 2D, 3C, and 4 would be subject to dismissal as free-standing claims.

Petitioner has also raised post-conviction counsel's alleged ineffective assistance in an effort to establish cause under *Martinez* to excuse the procedural defaults of several of his claims.  Where appropriate, the Court will assess whether *Martinez*'s equitable principle applies to excuse any of Vann's procedural defaults.

### D.  Investigation and Alibi Witnesses

Petitioner asserts in Claim 1 that trial counsel was ineffective for failing to properly investigate and call alibi witnesses.  He posits, specifically, that counsel should have "interviewed the victim's grandfather as a potential 'alibi' witness and . . . question[ed] the victim's grandmother as an 'alibi' witness" to demonstrate "that the victim was not home the night of the offenses."  (ECF No. 1 at 3.)  Respondent acknowledges the claim was exhausted through the state courts, but he maintains that the TCCA's rejection of the claim passes muster under the AEDPA.  The Court agrees.

At the post-conviction hearing, Petitioner did not testify about the subject of alibi witnesses.  (*See* ECF No. 22-17 at 6-13.)  He also did not present the victim's grandparents as witnesses at that proceeding.  (*See id.* at 1-53.)!

"[T]rial counsel testified that he had subpoenaed the victim's grandmother to trial because there was a possibility, according to the Petitioner, that the victim was staying at her grandmother's house on the night of the offenses."  *Vann*, 2018 WL 4181707, at *1.  However,

when he interviewed the grandmother outside of the courtroom she told him it "was not true" that the victim had been at her house on the night of the abuse "and that she was not going to help Mr. Vann." (ECF No. 22-17 at 25.) Counsel recalled that he had subpoenaed the victim's grandfather, but that he believed he was never served. *Vann*, 2018 WL 4181707, at *2. "Trial counsel further explained that in addition to the fact that the witnesses denied hosting the victim on the night of the offenses, the Petitioner also failed to indicate in his written statement to police that the victim was away from home that night." *Id.* He pointed out that Petitioner's testimony at trial was that "there was nothing out of the ordinary" on the night of the offenses and that "all of the kids went to bed as usual." *Id.*; (*see also* ECF No. 22-5 at 42.)  !!!

!      In its written decision, the post-conviction trial court found that "the petitioner . . . failed to testify at his own post conviction hearing as to how his trial attorney was ineffective." (ECF No. 22-16 at 80.) The court credited counsel's testimony that he "developed a trial strategy [and] talked to potential witnesses[.]" (*Id.*) The court concluded that Petitioner had "failed to present any credible evidence that his trial counsel failed to represent him properly at trial." (*Id.* at 81.) Post-conviction relief was therefore denied. (*Id.*)

On appeal, Vann argued that the post-conviction court erred in rejecting his claim of attorney ineffective assistance relating to alibi witnesses. *Vann*, 2018 WL 4181707, at *2. The TCCA found the argument to be without merit. Based on the record before it, the court found that "the 'alibi' witnesses in question were not presented and did not testify at the evidentiary hearing." *Id.* at *3. The court therefore concluded that Petitioner "failed to show that he was prejudiced by trial counsel's performance." *Id.* The TCCA further determined that Petitioner had not shown ineffectiveness of counsel because "the post-conviction court credited trial

16

counsel's testimony that the 'alibi' witnesses would not have testified favorably in support of the Petitioner's defense." *Id.*

As indicated above, the TCCA correctly identified *Strickland*'s standards and applied them to the facts adduced at trial and at the post-conviction hearing. Vann therefore cannot show that the court's decision is contrary to clearly established Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The state appellate court's decision is also not based on an unreasonable determination of the facts or an unreasonable application of *Strickland*'s standards to the facts. Firstly, Petitioner does not identify any clear and convincing evidence to undermine the state court's factual finding that Vann did not call the victim's grandparents to testify at the hearing. Indeed, the hearing transcript fully supports the finding. Therefore, Vann placed nothing on the record to suggest that these putative witnesses would have aided his defense. The TCCA's conclusion that Petitioner had failed to demonstrate that he was prejudiced by counsel's decision not to call the grandparents as witnesses was therefore patently reasonable. In addition, trial counsel's testimony that the grandparents would not have provided an alibi for Vann was credited by the post-conviction trial court and the TCCA refused to disturb that credibility determination. This Court, sitting in federal habeas, will not disturb the TCCA's own refusal to disrupt the lower court's credibility determination. *See Rice v. Collins*, 546 U.S. 333, 334-35 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."). On the basis of

counsel's credited testimony, the TCCA reasonably concluded that counsel did not perform deficiently by failing to call the witnesses at trial.

For these reasons, the state appellate court's decision upholding the denial of post-conviction relief was not contrary to, or an unreasonable application of, *Strickland*'s standards. It also was not based on unreasonable factual determinations. Accordingly, even if the Petition were timely, Claim 1 would be denied as non-meritorious.

E. Recusal

Petitioner asserts that the trial court erred in denying his recusal motion, which was based on his allegation that the trial judge and the victim attended the same church.[7] He acknowledges that he did not raise the issue on direct appeal, but he asserts that he defaulted the claim due to the ineffective assistance of trial and appellate counsel. He also faults post-conviction counsel for failing to argue that trial and appellate counsel were ineffective regarding the recusal issue. His assertions of cause for the procedural default mirror his free-standing claims relating to trial and appellate counsel. The Court's assessment of Petitioner's asserted cause for the default of the trial-error claim therefore necessarily overlaps with its analysis of the free-standing claims.

As for Vann's assertion of trial-counsel-ineffective-assistance, the state-court record belies the claim. Counsel moved for recusal of the trial judge both before and after trial. Notably, Petitioner does not say what more counsel should have done. He therefore cannot establish that counsel's conduct was deficient. Claim 2B is without merit.

---

[7] The Court will refer to Claim 2A as a "trial-error" claim, notwithstanding that Petitioner also asserts that the state appellate court denied him due process by "affirm[ing] the decision of the trial judge failing to recuse himself[.]" (ECF No. 1 at 5.) Because the recusal issue was not raised on direct appeal, the appellate court had no cause for addressing it. And, as Respondent points out, Petitioner never complained at any point in his state-court proceedings about the appellate court's failure to address the issue. To the extent Vann faults appellate counsel for *that* procedural default, he cannot prevail. As discussed herein, his ineffective-assistance-of-appellate-counsel claim is itself procedurally defaulted and the default is unexcused.

Insofar as Vann asserts that appellate counsel was ineffective, the record makes clear that appellate counsel did not raise the recusal issue before the TCCA. (*See* ECF No. 22-11 at 6.) The default of the trial-error claim therefore occurred on direct appeal. A claim challenging an attorney's failure to raise an issue on appeal is cognizable under § 2254. *See e.g.*, *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). An appellate counsel's ineffective assistance may also provide cause to excuse the default of a trial-error claim. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). However, to serve as cause, the appellate-counsel-ineffective-assistance claim must itself have been "presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* (quoting *Murray v. Carrier*, 447 U.S, 478, 489 (1986)).

Vann did not present to the state courts a claim that appellate counsel was ineffective for failing to argue the recusal issue on direct appeal. Therefore, his claim of ineffective assistance of appellate counsel in the present matter is itself procedurally defaulted. Petitioner's assertion that *Martinez* excuses the default because post-conviction counsel was ineffective in failing to raise the appellate-counsel claim is unavailing. The Supreme Court has refused to extend *Martinez* to claims of ineffective assistance of appellate counsel. *See Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (holding the ineffective assistance of post-conviction counsel is not cause to excuse the default of an appellate-counsel-ineffective-assistance claim). Claim 2C is therefore procedurally defaulted and the default is unexcused. As a free-standing claim, Claim 2C is thus not properly before the Court. And, because appellate counsel's alleged ineffective assistance relating the recusal issue was not raised and exhausted in the state courts, the claim cannot be used as cause to excuse the procedural default of the trial-error claim. The trial-error claim, Claim 2A, is therefore barred from federal habeas review.

19

For these reasons, Petitioner cannot prevail on any part of Claim 2.  Therefore, even if the Petition were timely, Claim 2 would be subject to dismissal in its entirety.

F.  <u>Testimony About Sexually Transmitted Disease</u>

Petitioner asserts in Claim 3A that trial counsel was ineffective for failing to object to the nurse practitioner's testimony that he tested positive for trichomoniasis.  He insists that counsel should have argued that the testimony was hearsay because it was based on lab results generated by a third-party.  He maintains in Claim 3B that appellate counsel was ineffective for failing to present the issue on direct appeal.

Both Claim 3A and Claim 3B are procedurally defaulted and the defaults are unexcused. Vann raised the trial-counsel-ineffective-assistance claim in the initial post-conviction proceeding.  (ECF No. 22-16 at 10-13.)  He did not, however, present the issue in his post-conviction appeal.  (*See* ECF No. 22-18 at 17-18.)  He therefore procedurally defaulted the claim.  He cannot rely on *Martinez* to clear the bar to federal habeas review because the equitable rule in that case does not apply to excuse a procedural default that occurs on post-conviction appeal.  *See Young v. Westbrooks*, 702 F. App'x 255, 267 (6th Cir. 2017) (citing *Martinez,* 5066 U.S. at 9, 16).  As for his claim challenging appellate counsel's failure to raise the hearsay issue on appeal, he never presented that claim in his post-conviction proceeding.  Under *Davila*, post-conviction counsel's alleged ineffective assistance in failing to raise the claim cannot provide cause to excuse the default.  *See Davila*, 137 S. Ct. at 2067.  Therefore, even if Claims 3A and 3B were not untimely, they would be subject to dismissal as being procedurally defaulted.

For all of these reasons, the Petition is **DISMISSED**.  Judgment shall be entered for Respondent.

**APPEAL ISSUES**

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2)-(3).   A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to dismiss the Petition.  Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore DENIED.[8]

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: December 17, 2021

---

[8] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.